## KRANSKI v. ATLANTIC COAST SHIPPING CO. et al.

### No. 1537.

District Court, D. Maryland.

Jan. 7, 1930.

J. Calvin Carney, of Baltimore, Md., for plaintiff.

L. Wethered Barroll and Fendall Marbury, both of Baltimore, Md., for defendant Atlantic Coast Shipping Co.

Amos W. W. Woodcock, U. S. Dist. Atty., of Baltimore, Md., for defendant Clark.

SOPER, District Judge.

This case comes before the court on the amended bill of complaint and a motion of the defendant to dismiss the bill. The point involved is whether or not there was any substantial evidence before the deputy commissioner which justified his conclusion of fact reached on April 17, 1929, that John Kranski, the injured man, was entitled to compensation on the basis of temporary partial disability. The theory of the complaint is that there was no evidence of temporary partial disability, and that the finding of the deputy commissioner should have been a temporary total disability. It is the settled rule in these cases that the findings of fact of the deputy commissioner are binding, if supported by evidence, which theory the plaintiff's counsel in this case does not dispute.

The case is not without difficulty because of the conflicting theories of the medical experts who examined and treated the injured man. The evidence leaves no doubt that John Kranski was severely injured, and that he was totally disabled up until November 28, 1928. There was a hearing in this case before the deputy commissioner on November 2, 1928. At that time Dr. Arthur Fehsenfeld testified, in substance, that the man had made a remarkable recovery from the injury which involved the dislocation and fracture of the first cervical vertebra. The doctor also testified that at the time of the hearing the physical disabilities had largely disappeared, except such as were consequent upon the fact that Kranski, who had been a stevedore, had done no manual work for a period of over six months, with the result that his muscular ability and his ability to stand discomfort had greatly decreased. The doctor also found a neurotic condition which made it difficult for the man to stand discomfort and to return to any sort of work; but it was evidently the opinion of the doctor that, if Kranski would make an effort, he would be able to perform

some sort of remunerative labor. Dr. Fehsenfeld expressed the opinion that the practical way to deal with the case was to grant the man permanent partial disability. The doctor evidently thought that a final settlement of the case would be helpful to the man's nervous condition, and seems also to have believed that the injured man would never be able to return to the work of stevedore labor which he performed previous to the accident. Upon this testimony the deputy commissioner made a finding of temporary partial disability, and for some weeks compensation was paid on this basis.

Subsequently Kranski reported his inability to do any work, and the case was referred to Dr. Spear for examination. This physician made a report on March 7, 1929. He found that the patient's complaint of pain in the head, dizziness, general weakness, etc., were manifestations of some cerebral spinal disturbance. He advised the patient to be admitted to the hospital for treatment, consisting of spinal punctures about twice a week. It was his opinion that, if the man recovered within six or eight months, that was about as much as could be expected. The man entered the hospital and submitted to one treatment, but, finding it extremely painful, declined further treatment, and left the hospital. The case was then brought before the deputy commissioner a second time, and a hearing was had, at which the witnesses were the injured man, Dr. Kunkowski, his personal physician, and Dr. Fehsenfeld, the witness above referred to who had testified at the first hearing. Dr. Kunkowski doubted the desirability of the spinal punctures, and testified in substance that what the man needed was rest and fresh air. It is a fair inference from his testimony that it was his opinion that Kranski was unable to do any work at the time the testimony was given. Dr. Fehsenfeld, while expressing a preference for his first opinion that the proper solution of the case was a grant of permanent partial disability, stated that he was obliged to be convinced by the specialist who made the recommendation that the man was suffering from intracranial pressure. Dr. Fehsenfeld also testified that in his opinion the man was not able, at the time of the testimony, to go back to work.

Upon this state of facts, the deputy commissioner made a finding under date of April 17, 1929, in which the following paragraph occurs:

"That on November 28, 1928, the Deputy Commissioner issued a compensation order finding that disability was partial from that date, and that the claimant's earning capacity as a result of the injury had been reduced by the sum of $21.00 per week; that he awarded compensation for temporary total disability at the rate of $14.00 per week subject to review after five weeks;

"That on January 10, 1929, the Deputy Commissioner ordered the continuance of compensation at the rate of $14.00 per week for a tentative period of two months from that date."

It is obvious that there is some misstatement of the findings, because in the same paragraph the disability is described as "partial" and also as "total." The final conclusion of the deputy commissioner on April 17, 1929, as expressed in the order, was that the claimant's physical condition was substantially the same as on November 28, 1928, and his earning capacity was the same. He therefore ordered that the claimant be paid $14 per week, beginning April 2, 1929, until the further order of the deputy commissioner.

The deputy commissioner seems to have been of the opinion that the facts, as recited in the first hearing, were unaffected by the events and the testimony subsequent to that hearing; but it seems to the court that, when all of the testimony is taken together, and careful consideration is given to that which was offered at the last hearing, there was no substantial testimony which warranted the conclusion that the injured man was able to perform some remunerative labor when the last testimony was given. The man's personal physician testified to the contrary, as did also Dr. Fehsenfeld. The report of Dr. Spear indicated that spinal treatment was necessary for his recovery, and all of the physicians agree that, if this treatment was to be given, the man could not work in the meantime. It is true that Dr. Fehsenfeld expressed his preference for his earlier opinion, but nevertheless he did also expressly defer to the opinion of the specialist. It seems to the court, therefore, that the order of the deputy commissioner can be justified only by rejecting both the report of Dr. Spear and the testimony which was heard on April 9th; but this cannot fairly be done, because it involves the rejection of the final modified opinion of Dr. Fehsenfeld, upon whose earlier opinion the first decision was based.

It is therefore the conclusion of the court that the complainant has made out a case for relief. The order of the deputy commissioner of April 17, 1929, should be suspended,

and the case should be returned to the deputy commissioner for further action.

But it should be borne in mind that the decision of the court is limited to the conditions as they existed on April 17, 1929, or the date of the last order of the deputy commissioner. It is not the purpose of the court to limit the deputy commissioner in any findings he may hereafter make as to how long the total disability of Kranski may have lasted since April 17, 1929; nor does the court intend to pass in any way upon the legal consequences which may flow from the refusal of Kranski to submit to further spinal treatment, if, in the opinion of the deputy commissioner, such treatment should have been undergone. Both of these questions are left open for the final decision of the deputy commissioner, notwithstanding the decision of the point involved in the case as it now appears before the court. On the other hand, the court does not decide that under the law the injured man is obliged to undergo any treatment, nor does the court decide what treatment would be unreasonable.